UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK NICHOLSON,
        Plaintiff,

v.                              Case No. 07-11134
                                Honorable Patrick J. Duggan

THE GREAT LAKES TOWING CO.,
        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT GREAT LAKES TOWING COMPANY'S MOTION *IN LIMINE*

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on June 9, 2008.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

On May 25, 2006, Plaintiff Mark Nicholson ("Nicholson") allegedly slipped and fell while working as a deck-hand aboard the Tug LOUISIANA in the Port of Toledo on the Maumee River in Ohio. On March 15, 2007, Nicholson filed this lawsuit against his employer, Defendant Great Lakes Towing Company ("GLT"), for damages allegedly resulting from the accident. Presently before the Court is GLT's motion *in limine*, filed March 15, 2008, which relates to the following events subsequent to Nicholson's fall: (a) GLT hired Dr. Steve Geiringer to evaluate Nicholson's condition and his ability to return to work; (b) Scott Patterson ("Patterson"), a former GLT tug captain and co-worker of Nicholson, was deposed in this matter and provided testimony that Nicholson wishes to introduce at trial; and, (c) within an hour after Nicholson's accident and before a picture of the surface of the tugboat's deck was photographed, GLT employees painted the deck

where Nicholson fell with non-skid paint.  In the pending motion, GLT urges the Court to: (a) hold that it was not required to file an expert report for Dr. Geiringer pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) and that he therefore is allowed to testify despite GLT's failure to file such a report; (b) rule that Patterson's testimony is not relevant and therefore is inadmissible; and (c) reject any attempt by Nicholson to suggest that GLT engaged in spoliation of evidence by repainting the tug's deck following Nicholson's accident.

**Whether GLT is Required to File a Rule 26(a)(2)(B) Report for Dr. Geiringer**

Rule 26(a)(2), setting forth the disclosure requirements for expert testimony, provides in part:

> (A) *In General*. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
> (B) *Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report– prepared and signed by the witness– *if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony*.

FED. R. CIV. P. 26(a)(2) (emphasis added).  Federal Rule of Civil Procedure 37 provides the following sanction for failing to comply with the requirements of Rule 26(a): "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. . . ." FED. R. CIV. P. 37(c)(1).  GLT has not filed a Rule 26(a)(2)(B) report for Dr. Geiringer

2

and now asks the Court to rule that it was not required to do so. GLT contends, and Nicholson does not refute, that Dr. Geiringer is not its employee. (Def.'s Mot. at 7.) Thus in order to be bound by Rule 26(a)(2)(B)'s requirements, GLT must have "retained or specially employed [Dr. Geiringer] to provide expert testimony" in this case. FED. R. CIV. P. 26(a)(2)(B).

Following his accident on the deck of the Tug LOUISIANA, Nicholson saw four doctors to receive treatment for his injuries. Two of those doctors, Dr. Joel Yeasting and Dr. Mimi Goddard, opined that Nicholson was fit to return to work; the other two doctors, Dr. Lance Chaldecott and Dr. Lesly Pompy, disagreed. A collective bargaining agreement ("CBA") between GLT and the union representing its employees, which governed Nicholson's employment, provided that Nicholson was entitled to receive a "weekly maintenance" at a rate of $300.00 per week for a maximum of twelve (12) months" if he was "unable to work because of an illness or injury arising out of his regular employment activities which incapacitates him for more than two (2) weeks, as certified by a Union Clinic Physician, . . ." (Def.'s Br. in Supp. of Mot. at 3.) The CBA further provided that "[i]n the event of any dispute as to the question of an employee's physical fitness, extent of injury, or ability to perform regular employment activities, the employee shall be examined by a doctor selected by the employer." (*Id.*) Pursuant to this provision, and in light of the disagreement among Nicholson's doctors as to his fitness to return to work, GLT notified Nicholson that he was required to undergo an examination by Dr. Geiringer. Nicholson's first appointment with Dr. Geiringer was scheduled for

3

October 4, 2006. Dr. Geiringer examined Nicholson on that date and again on March 26, 2007.

In *Fielden v. CSX Transportation, Inc.*, 482 F.3d 866 (6th Cir. 2007), the court set forth a number of factors to consider in determining whether a Rule 26(a)(2)(B) report is required for a particular physician: (1) whether the physician was retained to provide expert testimony; (2) whether the physician formed his or her opinion at the time of treatment or in anticipation of litigation; (3) whether the lack of a report would implicate Rule 26(a)'s purpose of avoiding surprise and unnecessary depositions; (4) whether there is room for debate as to the physician's opinion; and (5) whether the physician will testify to issues beyond those covered in ordinary medical training. *Id*. at 870-73. Consideration of these factors leads the Court to conclude that GLT did not "retain[] or specially employ[]" Dr. Geiringer "to provide expert testimony in th[is] case." *See* FED. R. CIV. P. 26(a)(2)(B).

First, Nicholson's initial appointment with Dr. Geiringer was more than five months before Nicholson filed this lawsuit and the second appointment preceded by a month the date when Nicholson served GLT with a Summons and a copy of the pending complaint (i.e. April 30, 2007). (*See* Doc. 2.) Second, the documentation attached to GLT's motion indicates that GLT referred Nicholson to Dr. Geiringer for examination, any recommended treatment, and an evaluation as to whether Nicholson was "fit for duty" or otherwise eligible for maintenance and cure benefits under the CBA. (*See* Def.'s Mot., Ex. A.) This evidence indicates that Dr. Geiringer was not retained to provide

expert testimony and that he formed his opinion(s) at the time of treatment, not in anticipation of litigation. Further, a Rule 26(a) report is not required to avoid surprise to Nicholson or to allow him to prepare his case adequately and efficiently, as he previously was informed of Dr. Geiringer's report(s) and opinion. Finally, to the extent he is testifying regarding Nicholson's injuries and the cause of those injuries, Dr. Geiringer relies on his ordinary medical training.

The Court therefore concludes that GLT was not required to file a Rule 26(a)(2)(B) report for Dr. Geiringer.

**Whether Patterson's Testimony Regarding Requested Changes to an Unrelated Accident Report is Relevant**

During Patterson's deposition in this case, Nicholson's counsel inquired about a report that Patterson completed following an accident unrelated to the one underlying this lawsuit. Specifically, Nicholson's counsel asked Patterson about a report he prepared following an accident on January 6, 2007, which occurred in the Port of Detroit and involved the M/V CALUMET and the Tug VERMONT. At the time, Patterson was the captain of the tug. During his testimony, Patterson stated that GLT subsequently asked him "to change the wording" or "polish [the report] up; although Patterson testified that GLT did not ask him to "chang[e] the gist of the story." (Pl.'s Resp., Ex. K at 114.) Nicholson's counsel then asked Patterson: "Have you ever told anyone that you refused to lie on that report?" (*Id.*) To which Patterson responded" "Yes. . . . To my way of thinking, any kind of change in the report was stretching the truth. I wanted it written the

5

way I wrote it." (*Id.*)

Apparently, Nicholson wants to use this testimony to suggest that GLT has attempted to cause its employees to lie on reports of accidents and "may be influencing Captain Luhta [the captain on the Tug LOUISIANA when Nicholson was injured] and other employees to alter their testimony" (Pl.'s Resp. Br. at 9.) According to Nicholson, this testimony from Patterson's deposition is relevant because Captain Luhta now is attempting to downplay reports he filed before Nicholson's accident which describe the defective condition of the LOUISIANA deck as a "safety hazard." (*Id.*) Nicholson surmises that GLT's prior attempt to cause Patterson to lie and/or change his report "may explain why Captain Luhta now attempts to [change his story]." (*Id.* at 10.)

Pursuant to the Federal Rules of Evidence, only relevant evidence is admissible. FED. R. EVID. 401. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* The Court does not find Patterson's testimony with respect to his prior report relevant to the pending litigation.

First, Patterson's deposition testimony is ambiguous at best with respect to whether GLT asked or told him to "lie" about the earlier accident. Second, even if the testimony did suggest improper conduct in that instance, it proves nothing with respect to a report prepared by a different captain (Captain Luhta), regarding a different accident that occurred approximately six months earlier. Finally, the evidence is not relevant with regard to Patterson's credibility and it clearly has no bearing on Luhta's credibility. In

6

the event Patterson testifies as a witness at trial, his deposition testimony actually bolsters his credibility (i.e. because he testified that he refused to lie and/or change the report).

The Court therefore grants GLT's motion to exclude this testimony.

**Whether Nicholson is Entitled to an Adverse Inference Presumption**

It appears that Nicholson will attempt to argue that GLT intentionally prevented the acquisition of evidence and/or the preservation of evidence regarding the defective condition of the tug's deck at the time of his accident. Nicholson relies on the fact that, on the day of his accident, GLT's Vice President of Operations, Gregg A. Thauvette, ordered Patterson to photograph the deck of the Tug LOUISIANA where Nicholson fell; however, within an hour after Nicholson's accident and before Patterson arrived to photograph the deck, GLT personnel– including Nicholson– applied non-skid paint to its surface. Thus when Patterson eventually photographed the deck, it did not show the condition of the deck at the time of the accident. Nicholson surmises that Patterson intentionally failed to photograph the deck before it was painted because Thauvette had issued an emergency order to paint the deck but Patterson failed to comply with the order before Nicholson's injury.

Under Michigan law, a party is entitled to a presumption that nonproduced evidence in another party's control would have been adverse to the latter party if there is evidence of intentional fraudulent conduct and intentional destruction of evidence. *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 495 (6th Cir. 2006) (citing *Ward v. Consol. Rail Corp.*, 472 Mich. 77, 85-85, 693 N.W.2d 366 (2005)). In this case,

7

Nicholson fails to show that GLT intentionally painted the deck of the Tug LOUISIANA before it could be photographed or that Patterson intentionally failed to take pictures of the deck before it was painted in order to conceal the condition of the deck at the time of Nicholson's injury. Tug personnel painted the area where Nicholson fell as soon as the tug returned to the Toledo port. Notably, Nicholson participated in repainting the deck. There is no evidence suggesting that Patterson, who was neither on the tug at the time of the accident nor at the Toledo port when the tug returned, intentionally delayed getting to the tug before the deck was repainted. Moreover, the fact that Nicholson helped repaint the deck undermines his suggestion that it was done to destroy evidence rather than simply to rectify an unsafe condition.

In response to GLT's motion, Nicholson asserts that GLT also intentionally destroyed evidence when it applied another coat of nonskid paint to the Tug LOUISIANA immediately before Nicholson's inspection of the tug in January 2008. (Pl.'s Resp. Br. at 13.) Nicholson argues that GLT's actions prevented him from obtaining photographs to show that the tugs of decks wear down to bare metal. (*Id*.) Again, there is no evidence that GLT re-painted the deck with the intent of concealing evidence. According to GLT, Nicholson has never expressed an interest in acquiring proof that the deck of the tugs wear down to bare metal. Thus, GLT had no reason to refrain from repainting any of its tugs. Additionally, not only did Nicholson obtain photographs of the Tug LOUISIANA's deck showing areas worn down to the bare metal, but his counsel secured the deposition testimony of a former GLT employee who was responsible for maintenance on the tugs at

8

the time of Nicholson's accident that the decks do get worn down to the bare metal and that Nicholson's photographs depicted as much. (*Id.*, Ex. P at 29-30.)

For the above reasons, the Court concludes that Nicholson is not entitled to a presumption that GLT re-painted the Tug LOUISIANA's deck after Nicholson's accident in order to conceal evidence.

## Conclusion

For the above reasons, the Court concludes that: (1) Dr. Geiringer's reports, opinions, and testimony are admissible despite GLT's failure to file a Rule 26(a)(2)(B) report from him; (2) Nicholson may not offer Patterson's deposition testimony regarding Patterson's report of an unrelated accident to suggest that GLT is encouraging its employees to lie about Nicholson's accident; and (3) Nicholson is not entitled an adverse inference presumption because GLT personnel applied non-skid paint to the Tug LOUISIANA's deck before Patterson photographed the deck.

Accordingly,

**IT IS ORDERED**, that GLT's motion *in limine*, filed March 15, 2008, is **GRANTED**.

                                      s/PATRICK J. DUGGAN
                                      UNITED STATES DISTRICT JUDGE

Copies to:
D. Bruce Beaton, Esq.
Frederick B. Goldsmith, Esq.
Lisa Milton, Esq.