UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK NICHOLSON,

        Plaintiff,

                                    Case No. 07-11134

v.

                                    Honorable Patrick J. Duggan

THE GREAT LAKES TOWING
COMPANY,

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

At a session of said court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on August 6, 2008.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

On March 15, 2008, Plaintiff Mark Nicholson ("Plaintiff") filed this lawsuit making three claims against Defendant The Great Lakes Towing Company ("Defendant"): (1) negligence under the Jones Act, 42 U.S.C. § 30104, (2) unseaworthiness under general maritime law, and (3) maintenance and cure under the general maritime law. Specifically, Plaintiff alleges that while he was handling the tow lines and traversing the deck of the tug "Louisiana," he slipped and fell because an area of the deck did not have adequate not skid material causing Plaintiff to suffer serious and permanent disabling injuries to his low back with radiculopathy into his lower

extremities. (Pl.'s Compl. at 11.) Presently before the Court is Defendant's motion for partial summary judgment on Plaintiff's claim for maintenance and cure pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, filed April 15, 2008. Plaintiff filed a Response to Defendant's motion on April 7, 2008. Defendant filed a Reply on April 11, 2008. Plaintiff filed a Supplemental Response on June 13, 2008. Defendant filed a Reply to Plaintiff's Supplemental Response on June 24, 2008. Plaintiff filed a Second Supplemental Response on July 25, 2008.[1] On July 25, 2008, this Court notified the parties that, pursuant to Local Rule 7.1(e)(2), it was dispensing with oral argument. For the reasons set forth below, this Court denies Defendant's motion for partial summary judgment.

## I.   Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof

---

[1]Plaintiff refers to his Supplemental Response as a Second Supplemental Response and his Second Supplemental Response as his Third Supplemental Response.

at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." 106 S. Ct. at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. 106 S. Ct. at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*

## II. Applicable Law and Analysis

### A. General Standards for Maintenance and Cure

Defendant seeks summary judgment on Plaintiff's claim for maintenance and cure. Defendant argues that Plaintiff has reached his maximum medical improvement ("MMI"), meaning that Plaintiff is not entitled to further maintenance and cure payments. Defendant paid Plaintiff's maintenance and cure through May 15, 2007.

For reasons stemming from "historical tradition and the realization that seamen are required to endure special perils and hardships," federal common law accords seamen special relief not available to other workers, including maintenance and cure. *Blainey v.*

*American Steamship Co.*, 990 F.2d 885, 887 (6th Cir. 2003) (quoting Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 5-1 (1987)). Maintenance is "a subsistence allowance designed to provide the seaman with compensation sufficient to pay for his food and lodging." *Huss v. King, Co., Inc.*, 338 F.3d 647, 650 n.1 (6th Cir. 2003). Cure is "the employer's obligation to pay for medical expenses for an injured seaman." *Id.*

Both maintenance and cure are, with certain exceptions, payable regardless of whether the employer or the seaman is at fault for the seaman's illness or injury. *Calimar S.S. Corp. v. Taylor*, 303 U.S. 525, 527-28, 58 S. Ct. 651, 653 (1938). The employer of an injured seaman must continue to pay maintenance and cure until the seaman reaches MMI. *Farrell v. United States*, 336 U.S. 511, 512, 69 S. Ct. 707, 708 (1949). MMI can be reached in three ways. First, a seaman may fully recover from his injuries. *Blainey v. American S.S. Co.*, 990 F.2d 885, 887 (6th Cir. 1993) (citing *Farrell*, 336 U.S. at 517-19 (1949)). Second, his injuries have been diagnosed as permanent. *Id.* In the case of permanent injury, maintenance and cure must continue until the seaman's incapacity is diagnosed as permanent. *Vella v. Ford Motor Co.*, 421 U.S. 1, 5-6, 95 S. Ct. 1381, 1383-84 (1975). Third, the injured seaman has not fully recovered, but his functional ability cannot be improved. *Marzean v. Nicholson Transit Co.*, 174 F.Supp. 348, 349 (E.D. Mich 1959). In other words, where "future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved." *Pellotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979); *see also In re RJF Int'l. Corp.*, 354 F.3d 104, 107

(1st Cir. 2004).

Additionally, the First Circuit has held that a physician need not use "magic words" such as "permanent" or "incapable of being improved" in a diagnosis, as such a rule would "elevate form over substance." *Whitman v. Miles*, 387 F.3d 68, 75 (1st Cir. 2004). It is a medical, not judicial determination of permanency that terminates a right to maintenance and cure. *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 202 (1st Cir. 1980). Such a determination should be unequivocal to terminate the right to maintenance and cure. *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 386 (5th Cir. 1985) (citing *Hubbard*, 626 F.2d at 202 (1st Cir. 1980)).

### B.     Whether Plaintiff Has Reached MMI

Defendant argues: (1) that every physician who has examined Plaintiff has concluded that Plaintiff has reached MMI, and (2) Plaintiff is receiving only palliative care (i.e., care that will merely relieve pain and suffering but not otherwise improve Plaintiff's condition). Thus, Defendant argues that it is no longer obligated to provide maintenance and cure to Plaintiff, entitling Defendant to summary judgment on Plaintiff's maintenance and cure claim. Defendant relies on the findings of every physician who has treated or examined Plaintiff in making the argument that Plaintiff has reached MMI. This Court will address each physician's findings below.

#### 1.     Lance R. Chaldecott, M.D.

Dr. Chaldecott, a Board Certified orthopedic surgeon, first examined Plaintiff on June 9, 2006. Dr. Chaldecott recommended that Plaintiff have an MRI examination.

5

(Def.'s Br. at 9, Ex. D at 10.) According to Dr. Chaldecott's June 30, 2006 notes, upon reviewing the results of Plaintiff's MRI, Dr. Chaldecott discussed a variety of treatment options, ranging from surgical intervention to nonoperative management (*Id.*, Ex. D at 4-5.) Nicholson testified that Dr. Chaldecott did not recommend surgery because "[Plaintiff] was too young . . . and . . . would lose [his] mobility." (*Id.*, Ex. B at 179.) Dr. Chaldecott's own notes do not reflect such a recommendation; the notes merely indicate that Dr. Chaldecott and Plaintiff discussed Plaintiff's options and Plaintiff wished to pursue non-surgical options. (*Id.*, Ex. D.) As late as March 16, 2007, Plaintiff was not interested in pursuing surgery, and was to see Dr. Chaldecott on an as needed basis. (*Id.*, Ex. D at 4.)

On April 2, 2008, Plaintiff returned to Dr. Chaldecott's office. (Pl.'s 3d [sic] Supp. Resp. at 5, Ex. A.) At that time, Plaintiff indicated his desire to have a diskogram performed as opposed to proceeding with his ongoing non-surgical management. (*Id.*, Ex. A at 1.) On June 18, 2008, Plaintiff told Dr. Chaldecott that he was interested in pursuing surgical intervention. (*Id.*, Ex. A at 3.) At that time, Dr. Chaldecott prescribed a lumbar diskogram, with an evaluation to follow in the next two weeks. (*Id.*)

Defendant argues that Plaintiff "cannot indefinitely 'disable' himself by continuing to hold out the remote possibility of future surgical intervention when he has rejected the idea for two years, and where his orthopedist flatly told him he was not a good candidate for surgery." (Def.'s Reply at 3.) Defendant goes on to state that the fact that Dr. Chaldecott was no longer treating Plaintiff "compels the conclusion that Dr. Chaldecott

and [Plaintiff] have each determined that [Plaintiff] has reached" MMI. (Def.'s Br. at 10.) Defendant continues by arguing that the fact that Dr. Chaldecott never made such a statement is immaterial, explaining that he need not use "magic words" such as "permanent" or "incapable of being improved," as such a rule "would elevate form over substance." (*Id.*) (citing *Whitman*, 387 F.3d at 75 (1st Cir. 2004)).

The Court need not reach the issue of whether Plaintiff can or has "indefinitely 'disabled'" himself, as Defendant has not demonstrated that Plaintiff has reached MMI. While it is true that Dr. Chaldecott need not use any "magic words," he used no words at all on the subject of Plaintiff's MMI. And, Defendant's inference that Plaintiff has reached MMI based on Dr. Chaldecott's silence is unpersuasive, especially given the fact that Dr. Chaldecott never revised his statement that Plaintiff had not met MMI.

### 2. Lesly Pompy, M.D.

After consulting with Dr. Chaldecott, Plaintiff commenced treatment with Dr. Lesly Pompey, a "pain management doctor." (Def.'s Br. at 10, Ex. B at 179.) Dr. Pompy's prescribed treatment includes pain-killing drugs such as Lyrica, Darvocet, and Oxycontin, and steroid injections. (*Id.*, Ex. G.) Additionally, in August 2006, Dr. Pompy referred Plaintiff to a rehabilitation center for advanced functional occupational therapy assessment. (Pl.'s Br. at 10, Ex. F.) In a February 16, 2007, work program progress summary from the rehabilitation center, the occupational therapist, Michael Polydoras, reported, "[Plaintiff] has demonstrated significant progress this interim with regards to static lifting. He was demonstrated some improvement with functional lifting. . . . Based

7

on [Plaintiff's] minimal progress with functional lifting, positional tolerances, and pain levels, it is recommended he be discharged from work conditioning." (Pl.'s Resp., Ex. F at 1.)

Defendant argues Dr. Pompy is providing merely palliative care rather than improving Plaintiff's physical condition. In support, Defendant makes several arguments. First, Defendant points to Dr. Pompy's deposition, where Dr. Pompy answered affirmatively when asked if he was providing palliative care and negatively when asked if he had been able to improve Plaintiff's function. (Def.'s Reply to Pl.'s 2d [sic] Supp. Resp. at 3-4, Ex. A at 39-40.) Second, while Dr. Pompy's initial patient questionnaire states "I understand that the goal of medication management is to reduce the intensity of the pain and to improve my ability to function and/or return to work" (Pl.'s Resp. at 13, Ex. D), Defendant argues this language is simply boilerplate, and simply having a "goal" has no bearing on whether Dr. Pompy hold out any reasonable hope that his treatment will improve Plaintiff's functional abilities (Def.'s Reply. at 4). Third, Defendant points out that Plaintiff himself conceded that Dr. Pompy's care has not improved his functional ability. (Def.'s Br., Ex. B at 181.) Fourth, Plaintiff states that Dr. Pompy never explains how he intends to improve Plaintiff's functional capacity. (Def.'s Reply at 1.)

Plaintiff counters by pointing out that Dr. Pompy testified that his intention in providing pain management to Plaintiff was to attempt to increase his function. (Pl.'s 2d Supp. Resp. at 7, Ex. B at 124.) In addition, Plaintiff points out that in Dr. Pompy's affidavit, Dr. Pompy stated "surgical intervention may increase his functional capacity."

8

(*Id.*, Ex. A at 2.)

The evidence of Dr. Pompy's care does not show that there is no factual issue regarding Plaintiff's MMI.  Dr. Pompy's care may improve Plaintiff's functional capacity; however, at the very least, Dr. Pompy's palliative care does not show that other doctors cannot improve Plaintiff's functional capacity.  Dr. Pompy's statement regarding surgical intervention further undermines Defendant's argument.  Thus, Defendant has not met their burden with this evidence.

### 3. Jacquelyn G. Lockhart, M.D.

Dr. Lockhart was retained by Plaintiff and later redesignated as a nontestifying consultant.  In her expert report, Dr. Lockhart wrote, "[Plaintiff's] overall prognosis in terms of function is extremely guarded in general. . . . [Plaintiff] has suffered a severe permanent impairment of body function that due to its known pathologic nature prevents him from being fit for duty."  (Pl.'s Br. at 11, Ex. I at 9.)  Dr. Lockhart also gave extensive recommendations, stating:

> [Plaintiff] requires aggressive interdisciplinary medical intervention involving a pain management specialist, rehabilitation physician (if not also pain management as well), orthopedic surgeon (potentially), cognitive behavioral therapist, psychiatrist, rehab and massage therapists.  Medical interventions include: cognitive behavioral therapy, pain adjuvant medication, trial of medical acupuncture, trial of appropriate pain injections, therapeutic massage, manual therapy techniques, sympathetic neuromodulation stimulation, and low impact aerobic reconditioning in a pool setting.

(*Id.*, Ex. I at 10.)

Despite the fact that Defendant "emphatically disputes Dr. Lockhart's assertion

that Nicholson has suffered a severe, permanent impairment," Defendant argues that if Dr. Lockhart's diagnosis of permanent impairment is to be believed, that means that Plaintiff has *de facto* reached his MMI. At the same time, Defendant argues that Dr. Lockhart's extensive recommendations are irrelevant because Dr. Lockhart's diagnosis of permanent impairment terminates Defendant's maintenance and cure obligation. (Def.'s Reply at 3; *See Vella*, 421 U.S. at 5-6, 95 S. Ct. at 1383-84 (1975)).

Despite the fact that Defendant disputes Dr. Lockhart's finding of permanent impairment, Defendant asks the Court to take her diagnosis as evidence that Plaintiff has reached MMI. The First Circuit has addressed the issue of permanent impairment and continuing maintenance and cure. *In re RJF Int'l Corp*, 354 F.3d 104, 106-07 (1st Cir. 2004). The court held that even in the case of a diagnosis of permanent impairment, when further treatment beyond that which is merely palliative can result in a permanent improvement short of a complete cure, this is enough to support an award of maintenance and cure. *Id.* Thus, even if the Court accepts Dr. Lockhart's diagnosis of permanent impairment, Defendant fails to demonstrate that Dr. Lockhart's recommendations are merely palliative rather than geared toward functional improvement. Thus, Defendant has failed to demonstrate that Plaintiff is no longer entitled to maintenance and cure.

### 4. Steve R. Geringer, M.D.

Dr. Geringer first examined Plaintiff at Defendant's request in October 2006, prior to litigation, in order to determine Plaintiff's fitness for duty as required under the collective bargaining agreement between Defendant and Plaintiff's union. (Def.'s Br. at

12.) At that time, Dr. Geringer explicitly said, "[Plaintiff] has not achieved MMI." (*Id.*, Ex. J at 18.) After reviewing diagnostic test results for Plaintiff, Dr. Geringer recommended an aggressive course of physical therapy. (*Id.*, Ex. J at 9.) In March 2007, Dr. Geringer reexamined Plaintiff, while at the same time reviewing a summary of a work hardening program that Plaintiff attended in early 2007. (*Id.*, Ex. J at 3.) In a letter to Defendant, Dr. Geringer stated, "I believe [Plaintiff] is fit for full duty status, and there should be no restrictions whatsoever needed for his return to his job." (*Id.*) Dr. Geringer made this statement despite the fact that the summary from the work hardening program indicated that Plaintiff was fit for light-medium work as opposed to the heavy work of a seaman. (Pl.'s Resp., Ex. F at 1.)

Defendant argues, "Dr. Geringer's letter unquestionably reflects his opinion that [Plaintiff] has reached MMI, as such a diagnosis is implicit in his determination that [Plaintiff] can return to work without any restrictions." Defendant's argument fails because while the Sixth Circuit has held that an employer's obligation is discharged when the seaman has successfully reentered gainful employment, *Inter Ocean S.S. Co. v. Behrendsen*, 128 F.2d 506, 508 (6th Cir. 1942), there is no evidence that Plaintiff successfully reentered gainful employment. Moreover, even if Dr. Geringer is correct in stating that Plaintiff can return to work, this is not the equivalent of stating, with or without "magic words," that Plaintiff has reached MMI. Regardless of Plaintiff's employment status, at no time did Dr. Geringer revise his statement that Plaintiff had not reached MMI.

Providing no citation to the record, Plaintiff argues that Dr. Geringer's findings are inconsistent with those of other doctors. The Court will not hunt through the record in an attempt to make Plaintiff's case for him. Nonetheless, Defendant's argument that Dr. Geringer's finding that Plaintiff is fit for full duty status is not sufficient to prove that Plaintiff has reached MMI. Thus, Defendant has not demonstrated that it is entitled to summary judgment on Plaintiff's claim for maintenance and cure.

### 5. Mini Goddard, M.D.

Dr. Pompy referred Plaintiff to Dr. Goddard, a physical medicine and rehabilitation specialist for further examination. (Def.'s Br. at 12-13, Ex. J at 12.) In a report dated September 18, 2006, Dr. Goddard stated:

> Normal study. There is no electrodiagnostic evidence to suggest a right lumbosacral radiculopathy. Also, there is no electrodiagnostic evidence of a mononeuropathy or lumbar plexopathy. With clinical correlation, it appears that he may have a mild "sensory" radiculopathy involving the right lower extremity, or "nerve irritation" to the left lower extremity, there is not even clinical evidence of nerve rotation or sensory radiculopathy.

(*Id.*) Defendant argues that Dr. Goddard's statement "supports the conclusion that [Plaintiff] never suffered **any** injury. At a minimum, however, [Dr. Goddard's] study serves as further evidence that [Plaintiff] has reached MMI." (*Id.* at 13.) Plaintiff does not discuss Dr. Goddard's findings.

While Dr. Goddard's statement may arguably serve as evidence that Plaintiff has reached MMI, such evidence is not sufficient to meet Defendant's burden necessary to

12

grant summary judgment.  Furthermore, Dr. Goddard's statement merely demonstrates inconsistency between the opinions of the doctors.  In other words, Dr. Goddard's statement further demonstrates that there is an issue of material fact as to whether Plaintiff has reached MMI

**III.    Conclusion**

For the above reasons, the Court concludes that Defendant failed to establish that Plaintiff is no longer entitled to maintenance and cure as a matter of law.  The Court holds that Defendant is not entitled to summary judgment with respect to this claim.

Accordingly,

**IT IS ORDERED**, that Defendant's partial motion for summary judgment on Plaintiff's claim for maintenance and cure is **DENIED**.


                                          s/PATRICK J. DUGGAN
                                          UNITED STATES DISTRICT JUDGE


Copies To:
D. Bruce Beaton
Eugene R. Ogrodowski
Frederick B. Goldsmith
Lisa T. Milton
Russell D. Giancola